Matter of H.R. (L.R.) (2025 NY Slip Op 52184(U))

[*1]

Matter of H.R. (L.R.)

2025 NY Slip Op 52184(U) [88 Misc 3d 1230(A)]

Decided on December 12, 2025

Family Court, New York County

Pels, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on December 12, 2025
Family Court, New York County

In the Matter of H.R. 
 A Child Under Eighteen Years of Age Alleged to be Neglected by L.R.,
Respondent.

File No. 329097

Jessica Page, Esq.Attorney for PetitionerAdministration for Children's
Services150 William Street, 5th FloorNew York, NY 1038Rachel
Patterson Esq.Attorney for RespondentNeighborhood Defender Service of
Harlem317 Lenox Ave, 10th Fl, New York, NY 10027Marianne Allegro,
Esq.Attorney for the ChildThe Legal Aid Society60 Lafayette StNew
York, NY 10013

Valerie Pels, J.

On November 3, 2025, counsel for respondent L.R. ("L.R.") filed a motion to dismiss for
failure to state a cause of action pursuant to CPLR 3211(a)(7) and 3212. Petitioner, the
Administration for Children's Services ("ACS") filed a response on November 7, 2025. On
December 1, 2025, counsel for L.R. filed a memorandum in support of her partial motion to
[*2]dismiss. The attorney for the child ("AFC") filed opposition
on December 2, 2025.
The amended petition, filed July 31, 2025, alleges that L.R. fails to provide the subject child,
H.R. (d.o.b. XX/XX/15), with an adequate education in that, according to Department of
Education records, H.R. has been absent 87 days and late 70 days, interfering with his speech and
occupational therapy services afforded under his Individualized Education Plan ("IEP"). The
petition alleges that the school has made L.R. aware of the concerns. Further, according to Child
Protective Specialist ("CPS") Tapia, on or about May 27, 2025, L.R. reported that H.R. is
diagnosed with autism for which he does not have additional services outside of those provided
in school.
The petition further alleges that L.R. fails to provide H.R. with proper supervision or
guardianship in that she suffers from a mental illness which impairs her ability to care for her
child. The petition alleges that, according to Metropolitan Hospital records, L.R. has been
diagnosed with schizoaffective disorder and was prescribed medication including but not limited
to Prozac and Navane. The petition alleges that, according to CPS Tapia, L.R. reported that she
was diagnosed with schizophrenia and bipolar disorder, but she has never had to take medication
and does not need to be evaluated. L.R. allegedly told CPS Tapia that she experiences blackouts
when she gets very upset.
Finally, the petition alleges that L.R. fails to provide H.R. with proper supervision or
guardianship, based on the above as well as the following: According to CPS Tapia, on or about
May 28, 2025, she conducted a home visit at the case address and observed a cockroach
infestation, a clogged bathtub, broken toilet, broken bathroom sink and broken refrigerator;
according to CPS Wong, L.R. reported that H.R. was taking sponge baths due to the broken
bathtub; the home lacks furniture and H.R. sleeps on a mattress covered in plastic on the floor;
CPS Wong offered to go with L.R. to NYCHA to address the needed repairs, but L.R. declined;
L.R. also declined furniture for H.R.. Paragraphs d) and e), at issue in the instant motion, are as
follows: "d. According to the school nurse at P169M, on or about June 10, 2025, the respondent
mother and subject child were observed panhandling on the street. According to CPS Tapia
Perez, when the panhandling was brought up to the respondent mother, she stated that this was
none of CPS Tapias [sic] business and that the respondent mother can do what she wants. e.
According to the subject childs [sic] teacher, Amanda Patty, on or about June 11, 2025, the
respondent mother and subject child were again observed panhandling on the street." According
to CPS Tapia, on or about June 11, 2025, CPS Tapia conducted an emergency removal of H.R.;
during the removal, L.R. lunged at CPS Tapia and NYPD officers had to intervene; L.R. was
repeatedly banging her head against the door to her apartment; L.R. told CPS Tapia to take H.R.
but refused to provide the child with any footwear; and after the removal, H.R. stated that he was
happy and felt much better.
While the face of the motion reflects that L.R. is seeking to dismiss paragraphs 3(d) &
(e) of the amended petition for failure to state a cause of action pursuant to CPLR 3211(a)(7) and
3212, it appears that L.R. intended only to make this application based on CPLR 3211(a)(7), in
that she argues in both her moving papers and her memorandum that paragraphs 3(d) & (e)
should be dismissed for failure to state a cause of action. Nowhere in her papers does she address
or make any arguments for a motion for summary judgment pursuant to CPLR 3212.
L.R. asserts that the panhandling allegations fail to support the claim that she was not
providing the minimum degree of care for her child. L.R. points out that panhandling is legal in
New York and is protected by the First Amendment, citing Loper v New York City Police
Dept., [*3]99 F2d 699 [US Ct of Appeals, Second Circuit
1993], wherein the court found that a New York statute prohibiting panhandling violated the
First Amendment. L.R. maintains that petitioner has failed to allege any harm or risk of harm to
H.R. based on his panhandling with his mother. She argues that the panhandling allegations in
essence penalize poverty, contrary to the legislative intent of Article Ten to avoid penalizing
poverty, as reflected in the express language of Family Court Act ("FCA") § 1012(f)(i)(A),
which prohibits a finding of neglect based on a parent's failure to ensure that a child receives
adequate food, clothing and shelter unless the parent has the financial ability to do so. L.R.
argues that the constitutional avoidance doctrine, which requires courts where possible, to
construe statutes in a manner consistent with constitutional principles, must be applied and,
therefore, FCA § 1012(f)(i)(A) cannot be construed to penalize a parent for panhandling
when that activity is constitutionally protected speech.
Petitioner filed an affirmation in opposition; however, the papers address a motion for
summary judgment and a motion to dismiss pursuant to FCA § 1051(c) where the aid of the
court is longer required, not the motion to dismiss pursuant to CPLR 3211(a)(7) for failure to
state a cause of action. Petitioner asserts that L.R. put H.R. at risk of harm, demonstrating a
failure to exercise a minimum degree of care, in that panhandling is a dangerous activity, putting
the child at risk of a traffic accident or of violence. Though not alleged in the petition, petitioner
claims that when the case worker saw L.R. panhandling, she offered to get food from a pantry for
the family, but L.R. declined.
The AFC, in her opposition papers, submits that CPLR 3211(a)(7) is inapplicable because
there is no requirement that every single subparagraph in a petition must independently include
all facts sufficient to make out a cause of action. The AFC argues that the legality of panhandling
is not the issue, which is rather whether L.R. neglected H.R. by failing to ensure he attend school
and by failing to address her mental health issues and the condition of the home, and the petition
alleges that L.R. declined the support offered by the case worker. The AFC asserts that the
allegations of panhandling may relate to the condition of the home, the lack of services, or
educational neglect. The AFC submits that reliance on CPLR 3212 for summary judgment is
misplaced as the matter is pre-fact-finding and discovery is not complete. As noted above, it
appears that counsel's reliance on CPLR 3212 was in error.
Pursuant to CPLR 3211(a)(7), a "party may move for judgment dismissing one or more
causes of action asserted against him on the ground that: the pleading fails to state a cause of
action." "On a motion to dismiss a petition in a child protective proceeding, the court must accept
the allegations set forth in the petition as true and afford the petitioner the benefit of every
favorable inference that can be drawn therefrom" (Matter of Keira O., 44 AD3d 668 [2d Dept 2007]).
Pursuant to FCA § 1012(f)(i)(A), a neglected child is a child under 18 years of age
"whose physical, mental of emotional condition has been impaired or is in imminent danger of
becoming impaired as a result of the failure of his parent or other person legally responsible for
his care to exercise a minimum degree of care in supplying the child with adequate food,
clothing, shelter or education in accordance with the provisions of part one of article sixty-five of
the education law, or medical, dental, optometrical or surgical care, though financially able to
do so or offered financial or other reasonable means to do so" (emphasis added).
To make a finding of neglect, first there must be proof of actual or imminent danger of harm
to the physical, emotional or mental well-being of the child (Nicholson v Scoppetta, 3 NY3d 357 [2004]). "Imminent danger,
however, must be near or impending, not merely [*4]possible"
(Id. at 369). "[A]dditionally, there must be a link or a causal connection between the basis
for the neglect petition and the circumstances that allegedly produce the child's impairment or
imminent danger of impairment" (Id.) Second, the petitioner must show that the
respondent failed to exercise a minimum degree of care for the child (Id.) The "statutory
test is 'minimum degree of care'—not maximum, not best, not ideal—and
the failure must be actual, not threatened" (Id. at 370).
Here, even assuming the panhandling allegations are true, panhandling alone, which is a
constitutionally protected activity, does not constitute neglect, unless the circumstances under
which the parent engages in that activity causes harm or places the child in imminent danger of
harm to the child's physical, emotional or mental well-being. While the court agrees with the
AFC that not every paragraph in the allegations has to support the entire cause of action, the
allegations do need to relate to the abuse or neglect of the child. The allegations in paragraphs
3(d) & (e) allege only that L.R. was panhandling with the child. While the petition includes
allegations that L.R. suffers from a mental illness that impairs her ability to care for the child,
there is no allegation that L.R. was observed to be behaving in an erratic or violent manner or
that she failed to adequately supervise H.R. while panhandling. Similarly, while the petition also
includes allegations that L.R. fails to ensure that H.R. attend school regularly, there are no
allegations that L.R. was panhandling with the child during school hours. There is no indication
that the child was forced to do anything related to the panhandling, that the weather was
inhospitable, that there was at any risk of violence or that he suffered any harm. Nor are there any
allegations that H.R. suffered emotionally from being with his mother while she asked for
money.
Neither petitioner nor the AFC cited any cases suggesting that panhandling alone rises to the
level of neglect, and neither could this court find anything to suggest that. In the only case that
this court found that addresses panhandling in the context of a neglect proceeding, Matter of Antonio S. (Antonio S., Sr.),
154 AD3d 420 [1st Dept 2017], the court made a finding of neglect in part based on the
respondent hitting the children with a belt or his hand when they refused to clean or panhandle,
and the children expressed fear. The finding was based on the respondent's use of corporal
punishment to force the children to panhandle and the fear that caused and was not based on the
mere fact of the children's involvement in that activity.
Without any support, petitioner claims that panhandling is inherently dangerous, and that the
child could be hit by a car or subjected to violence. As L.R. notes in her papers, any parent who
brings their child outside on the sidewalks of New York City could potentially risk involvement
in a vehicular accident or be subjected to violence. Likewise, the AFC's contention that the
alleged panhandling could be connected to mental illness, the condition of the home and the
absences from school, is purely speculative. "Imminent danger... must be near or impending, not
merely possible" (Nicholson v
Scoppetta, 3 NY3d 357 [2004]).
Further, FCA § 1012(f)(i)(A) explicitly states that a finding of neglect cannot be
supported if based on failure to provide necessities where the parent does not have the financial
means to do so. This clearly reflects the legislature's intent not to penalize parents for poverty.
While petitioner contends that the case worker offered food assistance to L.R. after she was
observed panhandling, this is not alleged in the petition. The AFC likewise asserts that L.R.
declined assistance, however that assistance was specifically related to furniture and does not
negate the possibility that L.R. was trying to obtain money for food or other necessities by
panhandling. In any event, assistance offered after-the-fact cannot be used to justify penalizing a
[*5]parent for asking the public for help before such assistance
was offered.
In the absence of any conduct that places a child in imminent danger of harm, panhandling
with a child alone does not constitute neglect. Based on the foregoing, the motion pursuant to
CPLR 3211(a)(7) is granted in that the allegations in paragraphs 3(d) & (e) are dismissed for
failure to state a cause of action.
This constitutes the decision and order of the court.
Dated: December 12, 2025New York, NYENTER:Hon. Valerie Pels